UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| BRIAN TAYLOR, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Civil Action 1:15-cv-1405-TSE-JFA |
| ) | |
| CORELOGIC SAFERENT, LLC, ) | |
| ) | |
|     Defendant. ) | |

### DEFENDANT CORELOGIC SAFERENT, LLC'S
### MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

Defendant, CoreLogic SafeRent, LLC ("SafeRent"), by counsel, submits this memorandum in opposition to Plaintiff's Motion to Compel (Dkt. No. 41).

#### INTRODUCTION

This is a single-plaintiff Fair Credit Reporting Act ("FCRA") action where SafeRent has disclosed in discovery the procedures that were used to generate Plaintiff's tenant screening report and related file disclosure request. It is also a case where Plaintiff is admittedly claiming minimal actual damages, and where no factual predicate for punitive damages exists. Yet, Plaintiff seeks to impose unduly burdensome discovery on SafeRent with respect to broad and irrelevant requests that have already been addressed and/or denied by the Court.

To clarify the state of the record before the Court with respect to discovery, SafeRent has provided the following information to Plaintiff:

- Responses to two sets of written interrogatories and requests for production and responses to requests for admission;

- The documents in SafeRent's possession specific to Plaintiff, including his February 2015 report and February 2015 file disclosure; both internally and with respect to the data SafeRent received from government sources;

- The identification of the specific governmental agencies that provided the public record information at issue in this case directly to SafeRent;

- A narrative description of the process used to match the records from SafeRent's database to the information that was provided by Plaintiff's leasing agent;

- Two versions of the document that describes the matching process used by SafeRent when Plaintiff's report was provided (February 2015) to link records from its database to the identifying information that was provided by the leasing agent;

- A document explaining the technical changes made to the "matching" process in October 2014, along with a statistical description of the impact of such changes on the number of records returned;

- A representation that there have been no relevant changes to SafeRent's "matching" process from the time that Plaintiff's report was generated to the present date;

- An identification of the witnesses with knowledge of the claims asserted;

- A screenshot showing the processes by which the criminal record database maintained by SafeRent can be searched by its leasing agent customers, including the information that SafeRent requires to process a tenant screening report, as well as the additional information about the applicant that can be input by the leasing agent;

- A copy of the contract between SafeRent and the leasing agent;

- Confirmation that Plaintiff never lodged any disputes with SafeRent or had any other form of contact with SafeRent apart from this lawsuit and his file disclosure request;

- Confirmation that SafeRent does not maintain contracts with the governmental agencies that provided the information that was included on Plaintiff's tenant screening report;

- A comprehensive list of prior lawsuits against SafeRent within the two-year period prior to the filing of this Complaint; and

- A detailed balance sheet showing SafeRent's net worth and how that figure was calculated.

All told, SafeRent has now responded to 17 Interrogatories, 25 Requests for Admission, and 41 Requests for Production in this case. While Plaintiff takes issue with the number of documents produced, he has everything he needs to fully litigate this case.[1]

In addition, Plaintiff deposed Praveen Chamdramohan, the Senior Director for SafeRent Technology Solutions Group, which handles its IT operations and the related coding regarding the proprietary "matching" algorithm used by SafeRent, and who also verified SafeRent's two sets of interrogatory responses. Plaintiff also deposed Jason Doyle, SafeRent's Director of Product Management on April 19, 2016, who is the author of the produced document that describes the matching process that was applied to Plaintiff' February 2015 report. Plaintiff has also noticed an overbroad Rule 30(b)(6) deposition with 30 topics covering every issue in this case (as well as some topics not at issue in this case), often through requests that are not limited in time. **Exhibit A**. SafeRent also subpoenaed the apartment complex to which Plaintiff applied and provided all responsive documents received to Plaintiff. As this reveals, and as demonstrated further below, SafeRent is participating in discovery in more than good faith, and it has complied with its discovery obligations, including with respect to the Court's March 4 Order.

Furthermore, this Motion to Compel does not come before the Court on a blank canvas. Far from it, as the Court has already addressed these same issues. At the hearing on the first Motion to Compel, the Court required SafeRent to produce a prior version of the only plain-English "matching" document that it had been able to locate. SafeRent did so.[2] The Court also required SafeRent to provide detailed information on prior lawsuits, which SafeRent did.

---

[1] In fact, Plaintiffs' counsel has actively used the discovery served in this case as the basis for asserting the same claims on behalf of additional Plaintiffs in a later-filed case, including by extensively quoting such discovery in the Complaint. *See Williams, et al. v. CoreLogic SafeRent, LLC*, 8:16-cv-00058 (D. Md. 2015) (Dkt. No. 13). Yet, Plaintiff continues to claim such discovery is deficient here.

[2] As disclosed to Plaintiff in SafeRent's interrogatory responses, Jason Doyle, who has been deposed, is the author of both versions of this document.

3

Finally, the Court required SafeRent to produce "documents sufficient to show" SafeRent's net worth. SafeRent provided its net worth, along with the balance sheet showing precisely how that net worth had been calculated. With that production, SafeRent fully complied with all of the issues arising out of the first Motion to Compel.

The first Motion to Compel, however, is perhaps even more notable in what it *did not* require SafeRent to produce, despite Plaintiff's demands. In this second Motion to Compel, Plaintiff seeks information related to "audits," "studies," and "reports" regarding SafeRent's review of its "matching" procedures, even though those audits, studies, and reports were conducted months *after* Plaintiff's report was generated and thus have no actual bearing on the procedures that were applied to generate his report. Plaintiff also seeks information related to customer and client "complaints," which are nothing more than irrelevant hearsay, especially in light of the fact that SafeRent has already provided the relevant statistics regarding its dispute volume. Plaintiff, however, sought that same information in connection with the prior Motion to Compel, which the Court denied as overly broad and burdensome. Not to be deterred, Plaintiff quickly re-served these same requests and simply modified the dates for which the information was being requested, changing the date range from 2012 to 2014. The Court's prior decision – which came in the context of a lengthy hearing – was not so superficial. Plaintiff's attempt to again seek to impose this burdensome and irrelevant written discovery should be rejected, with any further discovery in this regard occurring only in the context of depositions.[3]

---

[3] With respect to the "audits," "studies," and "complaints," the Court stated that Plaintiff could "pursue some of that in your depositions as to whether individuals have studied or made any [findings]; and if so, what their findings were, and that could be part of a topic in a 30(b)(6) deposition. But I am not going to require any response to that interrogatory as it's currently worded." (Hr'g Tr. at 48.)
　　SafeRent also reserves the right to object to the scope of any topics in this regard, as well as an attempt by Plaintiff to inquire into privileged communications regarding the matching logic.

4

## ARGUMENT

### I. Plaintiff seeks information that was the subject of the prior Motion to Compel, which this Court denied.

Plaintiff's Motion to Compel seeks the same types of information that was the subject of the First Motion to Compel, where the Court denied the requests.

#### A. The Court previously denied Plaintiff's request for audit-related discovery as overboard and unduly burdensome.

With respect to the "audit"-related information and "studies," Plaintiff originally sought this type of information from October 1, 2012 through the present. Specifically, in Interrogatory No. 6, Plaintiff requested that SafeRent "[i]dentify any research, study, report, memo, email or other document you have generated since January 1, 2012 that analyzes, discusses, or in any way references your policy and procedure for compliance with 15 U.S.C. § 1681e(b) or the manner in which you ensure the maximum possible accuracy of the credit reports you publish." At the March 4 hearing, counsel for Plaintiff further specified that he was seeking "any e-mails, other documents, internal correspondence" regarding "any audits of this particular [matching] policy, any research done, any comparison between the old numbers and the new numbers." (Hr'g Tr. at p. 47.) SafeRent objected to that discovery on various grounds, including that the request was overly broad and not likely to lead to the discovery of admissible evidence. SafeRent further noted that it had not made any changes to its proprietary matching algorithm that relate to the facts of this case since well before Plaintiff's report was transmitted in February 2015, which further underscored the irrelevance of this information here.

At the March 4 hearing, the Court ruled that Interrogatory No. 6 was "overbroad and unduly burdensome given the scope of what it's asking for" and that further discovery in this regard should occur by way of a Rule 30(b)(6) "deposition." *Id.*

5

After the hearing, Plaintiff quickly served another almost-verbatim interrogatory asking SafeRent to "identify and explain any such research, audits or studies and all employees who participated in the research, audits or study." (Pltf's Mem. at Ex. 3, No. 14.) Plaintiff also served a second set of document requests seeking, among other things, "any studies, audits or research since October 1, 2014, concerning or related to problems with your 'hit logic rules,' matching criteria, or the manner in which you assign information to a consumer report." (Pltf's Mem. at Ex. 2, No. 6.) As set forth above, the Court has already resolved these issues.

Moreover, in the interim, Plaintiff deposed two SafeRent employees on these same issues, including by reference to the documents produced showing the changes made to the algorithm in October 2014 and the related statistical analysis; the lack of any relevant subsequent changes to the matching process to date; and the nature of the review of the matching processes by SafeRent in 2015 and 2016. Especially in light of that other discovery, further written discovery should be denied.

### B. The Court previously denied Plaintiff's request for discovery regarding consumer and customer complaints as overbroad and unduly burdensome.

The Court denied Plaintiff's prior request for consumer and customer "complaints." At the March 4 hearing, Plaintiff's counsel argued that SafeRent should be required to produce "consumer complaints." (Hr'g Tr. at p. 47) ("And to the extent that there has been continued consumer complaints, any audits of this particular policy . . . that's important evidence for us in this case to show their knowledge."). Plaintiff also requested that SafeRent be ordered to produce information and documents regarding any "client feedback" from July 1, 2012 through the present. *Id.* at 46. Counsel for Plaintiff further specified that he was seeking documents discussing "customer complaints." *Id.* at 43. SafeRent objected on the grounds that consumer disputes would be hearsay and are not relevant to the reasonableness of the procedures utilized

6

by SafeRent at the time Plaintiff's report was produced, as well as for reasons of burden and scope. The Court denied the request, holding that the information sought was overbroad and unduly burdensome. *Id.* at p. 47-48.

Not to be deterred, just days later, Plaintiff served a second set of document requests seeking "any consumer disputes since October 1, 2014, where the consumer contends that you inaccurately assigned a criminal public record to them" and "any client complaints since October 1, 2014, concerning complaints [sic] false positives relating to criminal public record items." (Plt's Mem. at Ex. 2, Nos. 1, 2.) As with the discovery regarding "audits" and "studies," the Court should affirm its prior ruling.

And, Plaintiff has now had an opportunity to depose multiple SafeRent witnesses on these issues, where they were both asked about third-party customer and consumer "complaints." For all of those reasons, further written discovery should be denied.

## II. Plaintiff's demands are not proportional to the needs of the case.

Even if the discovery issues that are the subject of the Motion to Compel had not previously been considered by the Court, further discovery would still be improper.

Fed. R. Civ. P. 26(b)(1) was recently amended to limit the scope of discovery to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy*,* the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.." Fed. R. Civ. P. 26(b)(1). Plaintiff seeks to far exceed that standard here.

Apart from the lack of relevance of the information being sought, this Court should take this opportunity to impose that element of proportionality here. This is a case where minimal actual damages are at issue. Per Plaintiff's own testimony, his entire claim for quantifiable actual damages (before even reaching whether these claimed damages were caused by Defendant) does not exceed $3,500.[4] Plaintiff's vague claims of "stress" also appear to be as minimal as is theoretically possible, with Plaintiff testifying that such "stress" and "emotional distress" lasted for only one month and then abated when he found a new and higher-quality luxury apartment right next door to his old complex, and with Plaintiff never seeking any medical help or any form of counseling relating to that "stress" or "emotional distress." There also is no plausible predicate for the boilerplate demand for punitive damages, including because Plaintiff cannot contest that a mere 2% of the reports generated by SafeRent using the disclosed matching process during the relevant timeframe have resulted in any type of dispute.

In contrast, the only relevant inquiry with respect to the issues that animated Plaintiff's Motion is whether SafeRent had reasonable procedures to assure the maximum possible accuracy of the report it provided on Plaintiff in February 2015. This information has been disclosed. Plaintiff has also taken multiple depositions on these same topics. Further written discovery should be denied.

### III. SafeRent complied with the Court's Order regarding its net worth.

For his first dispute, Plaintiff seeks even more information on SafeRent's disclosed net worth. At the hearing on Plaintiff's original Motion to Compel, however, the Court stated that

---

[4] Plaintiff shares his new apartment with his live-in girlfriend, who pays between 60%-100% of the rent, depending on the month. Thus, the $400 difference in monthly rent between the apartment he was originally seeking and his new apartment is less than $2,000 annually for Plaintiff. Plaintiff also claims damages for the undocumented "time" he spent looking for the replacement apartment and dealing with the issues in this case, which he claims amounts to approximately $1,600. Plaintiff also claims to have desired to install a "door" in his new apartment for $2,000, but that door was not installed and no costs incurred. Plaintiff will also be moving out of the apartment for personal reasons in May 2016.

SafeRent needed to provide Plaintiff with "a number that you say is – this is how we – this is what we have calculated to be our net worth, and you provide them with the documents sufficient to show how that number was calculated, not all documents, not, you know, all that kind of stuff. But you got to -- you can't just give them a number." (Hr'g Tr. at p. 10).

In complying with the Court's order, SafeRent produced its net worth on a detailed balance sheet. That balance sheet listed the following financial figures that lead to the calculation of the disclosed net worth figure:

> (1) cash and cash equivalents; (2) accounts receivable; (3) prepaid expenses and other current assets; (4) total current assets; (5) property and equipment, net; (6) goodwill, net; (7) other intangible assets, net; (8) capitalized data and database costs, net; (9) LT other assets and prepaid; (10) total assets; (11) accounts payable and accrued expenses; (12) accrued salaries and benefits; (13) deferred revenue, current; (14) total current liabilities; (15) other liabilities; and (16) total liabilities.

That information satisfies the Court's Order, and it cannot be substantively disputed.[5]

Despite this, and contrary to the limited demands of the Court's Order, Plaintiff now seeks to compel SafeRent to produce underlying documents used to calculate the net worth figure. No further information is necessary or relevant. Plaintiff also offers no detail for what more he is seeking (nor does SafeRent know), which underscores the unreasonableness of his request in the context of a company with nationwide operations and many customers. As recognized by other courts, "the Plaintiff has asked for too much; the universe of documents responsive to [Plaintiff's request for net worth information] . . . is too broad and could encompass a vast amount of documents and would essentially amount to an audit of the company's financials." *Martin v. Redline Recovery Serv., LLC*, 2009 U.S. Dist. LEXIS 35468, at *4–5 (N.D. Ill. Apr. 1, 2009). Plaintiff's request compel further net worth information beyond what was previously ordered should be denied.

---

[5] This document is highly confidential and can be submitted to the Court for *in camera* review, if needed.

IV. **This Court previously denied Plaintiff's request for consumer and customer complaints as overly broad and unduly burdensome and it should likewise deny Plaintiff's present demand.**

Plaintiff also seeks to discover "any consumer disputes since October 1, 2014, where the consumer contends that [SafeRent] inaccurately assigned a criminal public record to them," (RFP No. 1), and "any client complaint since October 1, 2014, concerning complaints [sic] false positives relating to criminal public record items." (RFP No. 2.)

As set forth above, this substantive topic was already addressed by the Court and denied. In any event, the topic itself seeks communications that, by definition, would have addressed the situations of third parties that are unique to their facts and that have no bearing on this case. Indeed, 15 U.S.C. § 1681e(b) states that a consumer reporting agency must "follow reasonable procedures to assure maximum possible accuracy of the information *concerning the individual about whom the report relates*." 15 U.S.C. § 1681e(b) (emphasis added).

The demand to produce all documents on such abstract issues is also overly broad and burdensome, including because it would require a company-wide, dragnet search to identify any communication with any third party with respect to the issues identified. As other courts have recognized, such requests should be denied. *See*, *e.g.*, *Estes v. Lanx, Inc.*, 2015 U.S. Dist. LEXIS 166320, at *5 (N.D. Miss. Dec. 11, 2015) (finding disclosure of customers complaints would be "overly burdensome and unlikely to yield relevant matter").

Such third-party communications are also hearsay. Hence, they are not likely to lead to the discovery of admissible evidence and should not be compelled. *See, e.g., Mattingly v. Credit Management LP,* 2005 WL 3271683, *1 (D. Colo. June 7, 2005) (finding that the unrelated complaints are not relevant to any of the claims or defenses, that complaints being requested can best be described as unsworn "hearsay," and that the burden on the defendant to locate and

10

retrieve the unrelated complaints is substantial and outweighs any likely benefit) (citing *Marker v. Union Fidelity Life Ins. Co.,* 125 F.R.D. 121, 124 (M.D.N.C. 1989)).

Further, to the extent that Plaintiff is claiming that such third-party communications are relevant to prove that SafeRent was on "notice" of issues with its matching process, *see* Pltf's Mem. at pp. 9-10, the third-party communications themselves remain irrelevant. And, any concerns of "notice" have already been addressed by the fact that SafeRent has already disclosed in a verified interrogatory response that it was contacted by a mere 2% of all consumers that were the subject of its reporting for the purpose of filing *any* type of dispute. In addition, as required, SafeRent has provided Plaintiff with a list of the lawsuits that have been filed against SafeRent over the course of the last three years under § 1681e(b). Even more, SafeRent produced documents that note that SafeRent had not received any requests from customers seeking further alterations to its matching process from October 2014 through at least May 20, 2015 (the date that the document was authored); an eight-month period that includes the months before and after Plaintiff's report was generated in February 2015. (*See* Pltfs' Mem. at Ex. 2 pp. 2-3.) The request for any further information in this regard should be denied.

Finally, any potential probative value of this evidence is clearly outweighed by the danger of unfair prejudice. Fed. R. Evid. 403. Plaintiff seeks to introduce this information to a jury, and he claims that the dispute information is "significant in this case to demonstrate that SafeRent maintained unreasonable procedures." (Pltf's Mem. at pp. 8-9.) Any such introduction will unmistakably prejudice SafeRent. *Landis v. Jarden Corp.*, 5 F. Supp. 2d 808, 814-15 (N.D. W. Va. 2014) (excluding consumer complaint letters under Rule 403). The jury will no longer be focused on determining liability for Plaintiff's claims only, but could instead seek to hold SafeRent liable based on unrelated facts.

V.     **Subsequent "audits" or "studies" are irrelevant to the reasonableness of SafeRent's procedures as of February 2015.**

Even if it had not already been requested and denied, Plaintiff's further demand for any "studies," "audits," and "research" of the matching process is beyond the permissible scope of discovery, as that information is overly broad and irrelevant to Plaintiff's claims.

As a threshold matter, SafeRent has produced the policy document to Plaintiff that describes the matching process that was in place in February 2015, as well as the changes to the matching process that occurred in October 2014. That same document included a statistical comparison of the number of records returned under the "old" matching procedures and the procedures in place as of February 2015. Plaintiff thus has been provided with documents sufficient to assess SafeRent's matching procedures as of February 2015.

As this Court previously recognized, "we have to deal with the policies that were in place in February of 2015." (Hr'g Tr. at 44.) Any other information sought by Plaintiff has no bearing on the reasonableness of the procedures used in connection with preparing Plaintiff's consumer report. Indeed, the PowerPoint presentations and study that were referred to by SafeRent's Rule 30(b)(1) witness were all generated *after* the issuance of Plaintiff's report.[6] Indeed, the "study" identified by the witness was just published in mid-March 2016 (after the prior hearing). For those reasons, Plaintiff's requests should be denied.

IV.     **Plaintiff's request for "sanctions" is wholly without merit.**

Plaintiff seeks "sanctions" against SafeRent on the grounds that SafeRent allegedly "ignored the Court's instruction" regarding production of SafeRent's net worth information. (Pltf's Mem. at p. 13.) Plaintiff also seeks "sanctions" on the basis that SafeRent has not produced documents that describe or relate to its matching policy. In determining whether to

---

[6] Of course, the mere identification of the "study" and other PowerPoint presentations by the Rule 30(b)(1) witness does not make those documents relevant or require their production.

issue sanctions, a court must determine "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective." *Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 348 (4th Cir. 2001). SafeRent, however, did not fail to comply with the Court's Order in any regard, and sanctions are improper for that reason alone.

For the reasons detailed above, SafeRent complied with the Court's Order requiring it to produce its net worth and supporting documentation. *See* Section III, *supra*. Therefore, there are no grounds to support sanctions against SafeRent in that regard.

Plaintiff's second proffered basis for "sanctions" mischaracterizes the previously-denied request for: (1) "audit" documents and "studies" with; (2) the policy and procedure document describing the matching process as of "February 2015," only the latter of which was compelled. During the March 4 hearing, the Court stated:

> Well, I want you to look for Version 1, the document. I am also going to grant the motion to compel, and this is – just to be on the safe side, I don't think this is – from what you've indicated, I don't think that there is – will have any significant impact. But, I want you to look for Version 1 and produce it if its out there. In addition to that, am going to grant the motion to compel and require the defendant to produce any and all policy, manuals, procedural manuals, instructions, guidelines, that kind of typed information, which describe your policies, practices or procedures designed to maximize the accuracy of your public information that were in existence or applied to the time period during 2015.
>
> I do want you to understand that if nothing else gets produced, other than what has already been produced in Version 1, you are not going to be able to use any other documents going forward to say our policy on this issue was, you know, X, Y, or Z. So this is -- this is going to be your last chance for your client to find whatever information your client has that it intends to use to support, you know, it's position that it does take reasonable positions to assure the maximum accuracy of the information.

> So what it was doing is following it's reasonable policies and procedures ***back in February of 2015***. So that should take care of that issue.

(Hr'g Tr. at 17) (emphasis added). SafeRent located and produced "Version 1" of its matching policy document. Plaintiff's request for sanctions, however, conflates the "audit" documents with the "Entity Matching" policy document describing the "matching" process "in February of 2015." (*See* Pltf's Mem. at p. 3.) As the Court recognized in separately *denying* the request for audit documents, those two types of documents are distinct. Indeed, the "audit" documents all *post-date* February 2015, and the "study" identified by the Rule 30(b)(1) witness had not even been published as of the last March 4 hearing. Thus, Plaintiff's request for "sanctions" should be denied in its entirety.

## CONCLUSION

WHEREFORE, Defendant, CoreLogic SafeRent, LLC, requests that the Court: (1) deny Plaintiff's Motion to Compel and for Sanctions in its entirety; and (2) grant SafeRent such other and further relief as may be appropriate.

**CORELOGIC SAFERENT, LLC**


By:/s/*Meagan A. Mihalko*_____
David N. Anthony
Virginia State Bar No. 31696
Timothy J. St. George
Virginia State Bar No. 77349
Meagan A. Mihalko
Virginia State Bar No. 80703
TROUTMAN SANDERS LLP
1001 Haxall Point
P.O. Box 1122
Richmond, VA  23218
Telephone: (804) 697-5410
Facsimile: (804) 698-5118
E-mail: david.anthony@troutmansanders.com
E-mail: meagan.mihalko@troutmansanders.com
E-Mail: tim.stgeorge@troutmansanders.com

Ronald I. Raether, Jr. (*pro hac vice*)
TROUTMAN SANDERS LLP
5 Park Plaza
Suite 1400
Irvine, California 92614
Telephone: (949) 622-2722
Facsimile: (949) 622 -2739
ronald.raether@troutmansanders.com

*Attorneys for Defendant CoreLogic SafeRent, LLC*

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing pleading has been filed with the Court's Electronic Case Filing system on this 20th day of April, 2016, which will send a notice of electronic filing to the following counsel of record:

>Kristi C. Kelly, Esquire
>Andrew J. Guzzo, Esquire
>KELLY & CRANDALL PLC
>4084 University Drive, Suite 202A
>Fairfax, VA 22030
>Telephone: 703-424-7570
>Facsimile: 703-591-0167
>Email: kkelly@kellyandcrandall.com
>Email: aguzzo@kellyandcrandall.com
>
>*Counsel for Plaintiff*

>/s/*Meagan A. Mihalko*_____
>Meagan A. Mihalko
>Virginia State Bar No. 80703
>*Attorneys for CoreLogic SafeRent, LLC*
>TROUTMAN SANDERS LLP
>1001 Haxall Point
>Richmond, VA  23219
>Telephone: 804-697-1281
>Facsimile: 804-697-1339
>Email: meagan.mihalko@troutmansanders.com