**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| BRIAN TAYLOR,<br><br>Plaintiff,<br><br>v.<br><br>CORELOGIC SAFE RENT, LLC<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.: 1:15-cv-1405 (TSE/JFA) |

**RESPONSE IN SUPPORT OF PLAINTIFF'S**
**MOTION TO COMPEL AND FOR SANCTIONS**

The Plaintiff, Brian Taylor, by counsel, pursuant to Rule 37 of the Federal Rules of Civil Procedure, submits this Response in Support of his Motion to Compel and For Sanctions.

## I. Introduction

The recent depositions in this case confirm that Defendant Corelogic SafeRent, LLC's ("SafeRent") does not "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates" as mandated by the Fair Credit Reporting Act ("FCRA"). 15 U.S.C. § 1681e(b). Rather, SafeRent's goal is to "[redacted]" because some of its "[redacted]" (Doyle Depo. 44:16-18; 24:1-2, Apr. 19, 2016) (attached as Ex. 1) (filed under seal).[1] SafeRent has done everything within its power to shield this information from Plaintiff, including refusal to produce "smoking gun" emails, studies and audits

[1] Plaintiff redacts the portions of the transcript quoted because SafeRent designated the deposition as confidential.

that would establish SafeRent's intentional decision to craft a procedure designed to assure over inclusion of false positives to the detriment of consumers.

What happened in this case was not a mistake. It was not a glitch in an otherwise precise procedure. It was intentional misconduct designed to permit over reporting of criminal record information. By refusing to produce any information beyond the actual coding of its matching criteria, SafeRent seeks to strip the case and the violation of its context. If Plaintiff cannot present actual context of SafeRent's knowledge, intent, and the lack of mistake, the jury will not have a complete factual picture that accurately reflects the events and reasonableness of SafeRent's conduct.

In response to the motion, SafeRent largely attempts to divert the attention of the Court by exaggerating its discovery efforts in this case and misrepresenting Plaintiff's actual damages. Worse yet, SafeRent mischaracterizes the Court's prior ruling as standing for the proposition that any request for studies, research and audits is per se overbroad and unduly burdensome. The Court did not make such a broad ruling. Rather, the Court denied Plaintiff's request because the interrogatory was poorly drafted and, in any event, Defendant's counsel represented to the Court that it "provided a full response to [interrogatory # 6] with respect to the time period in dispute."[2]

---

[2] The Court did not specifically indicate that Defendant's response factored into its decision. However, the Court expressly asked Defendant's counsel whether there was any documents "or any information that you should identify in response to interrogatory number six, as to research, studies, reports, memos, e-mails that discusses or references, you know, the compliance with the new policies." (Mot. Compel Hr'g Trans., 44-45, Mar. 4, 2016). This representation was false. (*See, e..g.,* Ex. 1, 74:19-22) ("Q. [redacted] ."). Presumably, if the Court believed this information was irrelevant or over broad on its face, the Court would not have concerned itself with the existence of these documents.

But the most egregious aspect of SafeRent's opposition is its misrepresentations to the Court that: (1) "SafeRent has produced the policy document to Plaintiff that describes the matching process that was in place in February 2015," and (2) SafeRent's insinuation that it will make this information available in a Rule 30(b)(6) deposition. (Def.'s Opp. at 4).

With respect to the first representation, SafeRent's Director of Product Management, Jason Doyle, testified:

[redacted]

[redacted]

(Ex. 1, 74:3-6) (emphasis added). Doyle also testified that an unproduced "nicknames table" exists, *i.e.*, a table that would explain why Br*yan* Taylor's information ended up in the consumer report of Br*ian* Taylor. (Ex. 1, 69:19-23). All of this information should have been produced in response to the Court's Order dated March 4, 2016.

As to the second representation, SafeRent's counsel instructed Doyle—the leader of the project—not to provide any information about the studies, research or audits due to attorney-client privilege *even though SafeRent has yet to produce any privilege log*. (Ex. 1, 32:24-33-15). Thus, it is misleading for SafeRent to suggest that a Rule 30(b)(6) deposition would be more appropriate mechanism to alleviate the purported burden of producing the relevant information at issue in this motion.

This Motion to Compel has not been casually filed, and it is not for marginally relevant documents. Rather, SafeRent is expressly withholding critical documents—many of which are easily searchable via Outlook—that have a direct bearing on Plaintiff's ability to prove that

SafeRent violated § 1681e(b) of the FCRA. SafeRent should be compelled to produce the information requested in this motion and sanctioned for its efforts to stonewall discovery throughout this case, including disobedience of the Court's prior order.

## II. Argument

### 1. SafeRent's Overly Broad and Unduly Burdensome Objections Are Improper and Misleading.

SafeRent opens its memorandum by mischaracterizing the scope of the Court's prior ruling, which never held or suggested that the studies, research and audit-related materials were per se overly broad and unduly burdensome. (Def.'s Mem. at 5). The Court's ruling was not even close to as broad as SafeRent contends. Rather, the Court stated "[w]ell, looking at the way the interrogatory number six is worded, I do think its overbroad and unduly burdensome given the scope of what it's asking for. And based on that I am going to deny the motion to compel on interrogatory number six. . . . [] I am not going to require any response to that interrogatory as it's currently worded." (Mot. Compel Hr'g Trans. at 47).

Based on the Court's issue with the broad language of the interrogatory, Plaintiff narrowed the timeframe and scope of his requests. (*See* Dkt. No. 42-2, at RFP Nos. 1, 2, 5, 6, and 11). For example, Plaintiff asked SafeRent to "[p]roduce any manuals, documents, audits or studies related [to] or concerning ***the second phase of your project to implement the new matching procedures***." (*See* Dkt. No. 42-2, at RFP No. 11) (emphasis added). Similarly, Plaintiff asked SafeRent to produce all emails between its employees since October 1, 2014, concerning or related to problems with its matching criteria. (*Id*. at RFP No. 5). By contrast, the prior interrogatory sought all documents analyzing, discussing or "in any way refererc[ing] your policy and procedure for

compliance with 15 U.S.C. § 1681e(b) or the manner in which you ensure the maximum possible accuracy of the credit reports you publish." (*See* Dkt. No. 15-2, at Int. No. 6). The differences between the former request and the new requests are obvious and significant. Simply put, Plaintiff significantly narrowed the scope of the request (i.e., studies and audits concerning the second phase as opposed to all documents in any way referencing its matching criteria), as well as the timeframe from January 1, 2012, to October 2014. *Id*. at RFP Nos. 5 & 11.

Aside from its mischaracterization of the Court's ruling, SafeRent does not even attempt to articulate any particular burden or expense, nor does it offer a declaration or affidavit regarding the time or expense of compliance. "[M]erely stating that a discovery request is 'overbroad' or 'unduly burdensome'" does not suffice as a proper objection. *Cappetta v. GC Servs. Ltd. P'ship*, 2008 WL 5377934, at *3 (E.D. Va. Dec. 24, 2008) (Lauck, J.). Rather, "a party objecting on the grounds that a request is overly burdensome must submit affidavits or other evidence indicating with specificity the nature and extent of the burden." *Id*.[3]

Other than its mischaracterization of the Court's order, SafeRent does not raise a single burden or issue that makes Plaintiff's requests overly broad or unduly burdensome.[4] Additionally, SafeRent's responses expressly indicate that it is withholding documents responsive to the request. In other words, a majority of the burden—locating the actual documents—has already occurred. Regardless, the "mere fact that responding to a discovery request will require the objecting party

---

[3] *See also Chubb Integrated Systems Limited v. Nat'l Bank of Washington*, 103 F.R.D. 52, 59–60 (D.D.C. 1984) (The party objecting to discovery "must show specifically how an interrogatory is overly broad, burdensome or oppressive, by submitting affidavits or offering evidence which reveals the nature of the burden.").

[4] During the parties' meet and confer conferences, SafeRent has not raised any meaningful burden either.

to expend considerable time, effort and expense consulting, reviewing and analyzing huge volumes of documents and information is an insufficient basis to object to a relevant discovery request." *Id*. (internal citations omitted). At best, SafeRent's burden is that of any other party in litigation—the burden of litigation itself.

**2. SafeRent Mischaracterizes the Potential Value of the Case and Exaggerates Its Discovery Compliance.**

A majority of SafeRent's motion exaggerates its production in effort to persuade the Court that the sought after discovery is not proportional to the demands of the case. (Def.'s Opp. 1-2, 7-8.) To that end, SafeRent grossly exaggerates its written discovery efforts, which have amounted to nothing more than: (1) production of 62 pages of documents (consisting mostly of Plaintiff's consumer report);[5] (2) identification of a single witness, Chandramohan;[6] (3) responding to 17 interrogatories—compromised mostly of objections; and (4) responding to 25 uncontroversial

---

[5] Broken down, the 62 pages include: (1) the consumer report (Bates Nos. 1-22); (2) Plaintiff's letter requesting his disclosure (Bates Nos. 23-28); (3) an excel spreadsheet showing the underlying raw data for public records attributed to Plaintiff (Bates Nos. 29); (4) screen shots showing internal customer relations marks to the Plaintiff's file from February 2015 through March 3, 2015 (Bates Nos. 30-34); (5) intelligible screen shots showing the interface SafeRent provides to its customers (Bates Nos. 35-41); (6) Version 2.0 of the Procedure Manual (Bates Nos. 42-48); (7) the Screening Service Agreement between SafeRent and the management company for Plaintiff's landlord (Bates Nos. 49-55); (8) Version 1.0 of the Procedure Manual (Bates Nos. 56-61); and (9) SafeRent's one-page net worth document.

[6] SafeRent never identified Doyle pursuant to Rule 26(a)(1) or in response to Plaintiff's interrogatory asking for witnesses with knowledge. Plaintiff first learned of Doyle when SafeRent filed its response to the Motion to Seal, which included a *purported* declaration from Doyle. When asked if he had seen the declaration prior to his deposition, Doyle testified: " [redacted] " Ex. 1, 15: 6-10; *see also* 15:14-17 ("Q. [redacted] ."). Doyle's phantom declaration is the quintessential example of SafeRent's disregard of its litigation obligations.

requests for admission. Production of 62 documents and answering several interrogatories is not unique or burdensome, especially to a party who specializes in gathering and distilling information. *Soutter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183, 197 (E.D. Va. 2015) ("Equifax's protests ring especially hollow in light of its own substantial capabilities. . . . In short, Equifax's very business model includes gathering and distilling information from a wide variety of sources in order to glean insights about individuals. The irony here presumably is not lost on Equifax, and certainly is not lost on the Court."). An additional search of two employees' email accounts is a small task for a company who boasts about its advanced technology and "rapid turnaround" of information.[7]

SafeRent also blatantly downplays Plaintiff's potential recovery in this case in an effort to avoid discovery.[8] Plaintiff has not only articulated specific economic damages, but Plaintiff also seeks non-economic damages in the form of emotional distress and harm to his reputation. If SafeRent truly believes this case involves nominal damages, it should review *Smith v. LexisNexis Screening Solutions, Inc.*—a recent case with similar facts. 2015 WL 5719675, at *1 (E.D. Mich. 2015). In *Smith*, a job applicant brought a § 1681e(b) claim against a consumer reporting agency after it published inaccurate criminal convictions belonging to David Oscar Smith, who was not the plaintiff, David Alan Smith. *Id*. Following a trial, a jury found the defendant liable and ordered

---

[7] http://www.corelogic.com/industry/multifamily-housing-solutions.aspx (last visited Apr. 21, 2016).

[8] SafeRent's representation that Plaintiff is "admittedly claiming minimal actual damages" is utterly false. It is no surprise that SafeRent does not attach Plaintiff's discovery responses regarding his actual damages or his deposition testimony, which unequivocally establish otherwise. Moreover, SafeRent's position defies common sense—certainly, any parent (or public school teacher) would appreciate the emotional stress and anxieties of learning you were denied an apartment for yourself and your child.

$75,000 in compensatory damages, which included at least $72,360 in compensatory damages attributable to the emotional distress and harm to the plaintiff's reputation. *Id*. at 12. The jury also awarded punitive damages in the amount of $300,000, although the district court remitted this award to $150,000. *Id*. at 1.

Simply put, SafeRent has incurred more time and resources in responding to this motion than it would take to produce the requested information. There is no true burden on SafeRent and the discovery is proportional to the needs of the case when considering the importance of the issues at stake, the amount in controversy, SafeRent's relative access to the information, its resources and the importance of the discovery on resolving the issues in this case. See Fed. R. Civ. P. 26(b)(1). In this same vein, most of the responsive documents should be in Chandramohan and Doyle's email, who confirmed the existence of the documents in their easily searchable Outlook accounts. [9]

**3. Subsequent Studies, Audits and Research are Relevant and Admissible.**

SafeRent further argues that the studies, audits and research sought by Plaintiff exceeds permissible discovery because the studies and research occurred "after the issuance of Plaintiff's report" in this case. (Def.'s Opp. at 12). SafeRent's other misrepresentations cast serious doubt on this representation, especially in light Doyle's phantom declaration submitted to the Court. In addition to the purposes identified in Plaintiff's opening memorandum, the studies, audits and research would also provide relevant and admissible evidence regarding: (1) SafeRent's goal of striking the balance between false positive and false negatives, as opposed to assuring maximum

[9] https://support.office.com/en-us/article/Find-a-message-or-item-with-Instant-Search-c5d69ecc-9f0e-497a-8f4d-ceffed5c7ab8 (last visited on April 21, 2016).

possible accuracy; (2) SafeRent's intent in designing its algorithm (customer satisfaction v. FCRA compliance); and (3) the absence of any mistake.

Approximately six months ago, this Court admitted similar evidence in a case alleging a violation of the Virginia Consumer Protection Act. *Baker v. Wright Experience, Inc*., 2015 WL 2137278, at *2 (E.D. Va. May 7, 2015) (Cacheris, J.). In *Wright*, the plaintiff sought to introduce evidence from the defendant's former customer who had alleged similar fraudulently billing practices against the defendant. The defendant objected to the former customer's testimony, arguing that the evidence was irrelevant and offered to present another customer's claim to prove conformity therewith. In rejecting the defendant's argument, this Court held that the testimony was admissible to show intent, an absence of mistake and knowledge on the defendant's part. In doing so, the Court explained, "[s]ince intent is an issue for the VCPA claim, prior activity showing a willingness to commit that act may be probative, even if that evidence may tend to also show a character trait." *Id*. (internal citation omitted).

The studies and audit-related documents would not only show SafeRent's intent and the lack of a mistake, but it would also help establish the proper measure of punitive damages.[10] As explained in Plaintiff's opening memorandum, the Supreme Court has made clear that "evidence that a defendant has repeatedly engaged in prohibited conduct while knowing ***or suspecting that it was unlawful*** would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 576-

[10] In its opposition, SafeRent disregards Plaintiff's arguments that the studies and audits are relevant to punitive damages. Instead, SafeRent contends that this is a case "where no factual predicate for punitive damages exist." (Def.'s Opp. at 1).

77, (emphasis added). To that end, in determining the proper amount of damages, binding case law teaches that the most important factor is "the degree of reprehensibility" which includes considering whether the conduct involved repeated actions or whether the conduct was a mere accident. *Saunders v. Branch Banking & Trust Co. of VA*, 526 F.3d 142, 152 (4th Cir. 2008) (citing *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003). Absent an order compelling this information, Plaintiff would be prohibited from presenting evidence regarding this paramount factor for determining punitive damages.

**4. Prior Consumer Complaints Are Not Hearsay, Which is An Improper Objection Under Rule 26.**

For similar reasons, the Court should also order SafeRent to produce any *consumer* complaints since October 1, 2014, where the consumer contends that SafeRent inaccurately assigned criminal public records to them. (Dkt. No. 42-2, at RFP No. 2). Again, SafeRent does not articulate any burden that would result from the production of this information. Rather, the crux of SafeRent's opposition contends that the consumer complaints are hearsay and, therefore, not discoverable. SafeRent's hearsay objection is incorrect for two reasons.

First, prior complaints and dispute are not hearsay because they are not being offered for the truth of the matter asserted, *i.e.*, that SafeRent inaccurately assigned criminal public record information to the consumer. Courts have rejected similar hearsay objections within this context. *See, e.g.*, *Randolph v. City of E. Palo Alto*, 2008 WL 618908, at *7, n. 2 (N.D. Cal. Mar. 1, 2008) ("plaintiff is introducing these investigations not to show action in conformity therewith, but to show Frayer's intent and motive and to show the city's knowledge of these prior complaints."). Additionally, the Fourth Circuit has expressly observed that "evidence that other consumers have

lodged complaints" is an appropriate consideration in an FCRA willfulness analysis. *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 418 (4th Cir. 2001) ("There is no evidence that other consumers have lodged complaints similar to Dalton's against CAI."). Consistent with this principle, courts have admitted evidence of consent decrees and other consumer complaints in FCRA cases.[11] Such evidence has also been admitted by this Court in other cases and upheld on appeal to the Fourth Circuit. *JTH Tax, Inc. v. H & R Block E. Tax Servs., Inc.*, 28 F. App'x 207, 211 (4th Cir. 2002) (affirming decision of the district court to admit evidence of prior misconduct).

Second, SafeRent's hearsay objection conflates the Federal Rules of Evidence with the Federal Rules of Civil Procedure. Rule 26(a)(2)(B) expressly provides that information "within the scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(a)(2)(B). Here, the question is whether the information is discoverable pursuant to Rule 26; not whether it is admissible under the Federal Rules of Evidence. *See* Advisory Committee Notes, 1946 Amendments ("The amendments also modify the provision regarding discovery of information not admissible in evidence. As added in 1946, this sentence was designed to make clear that otherwise relevant material could not be withheld because it was hearsay or otherwise inadmissible.").

Accordingly, SafeRent's hearsay objection should be stricken.

---

[11] *Drew v. Equifax Info. Servs., LLC*, 2010 WL 5022466, at *12 (N.D. Cal. Dec. 3, 2010) ("Defendant argues that it was prejudiced even at the liability stage by the introduction of this evidence and testimony [regarding an FTC consent decree]. The Court addressed this argument above in the context of defendant's punitive damages argument, and it rejects defendant's liability argument for the same reasons."); *Miller v. Equifax Info. Servs., LLC.*, No. 3:11-CV-01231-BR, 2014 WL 2123560, at *2 (D. Or. May 20, 2014) ("The jury had the benefit of two expert witnesses to assist them in assessing Equifax's alleged FCRA violations: Evan Hendricks, Miller's expert, testified about other mixed-file cases in which juries had found Equifax violated FCRA[.]").

**5. SafeRent's Opposition is Silent Regarding Plaintiff's Request for the Emails.**

Plaintiff also moved the Court to compel SafeRent to produce any "e-mails between [its] employees since October 1, 2014, concerning or related to problems with [its] 'hit logic rules' matching criteria, or the manner in which you assign information to a consumer report." (Dkt. No. 42-2 at RFP No. 5). Again, SafeRent's response expressly indicates that it is withholding documents responsive to this request, yet SafeRent refuses to produce any of the documents or otherwise engage in a compromise. Worse yet, both Chandramohan and Doyle confirmed that neither of them was asked to search or produce e-mails in response to Plaintiff's discovery requests. In its opposition, SafeRent does not specifically address this request. Regardless, the Court should compel SafeRent to provide a full and complete response to RFP No. 5.

**6. SafeRent Disobeyed the Court's Order Regarding Its Net Worth.**

SafeRent contends that it complied with the Court's order by "producing a detailed balance sheet." (Def.'s Opp. at 9). To that end, SafeRent argues that "[n]o further information is necessary or relevant." *Id*. SafeRent attempts to rewrite the clear instruction of the Court:

> Attorney St. George: And my other thought would the be that in ruling in that manner and ***requiring the production of any underlying documents and the like***, the Court would actually be going farther in the parties' meet and confer sessions which was a stipulation.
>
> THE COURT: Right. Well, you know, the parties had a chance to work it out. They didn't do it. And, you know, am looking at the discovery requests that were here. You certainly had an opportunity to agree to a stipulation. You didn't do it. You brought the issue in front of the court, and the court now decides what it is it's going to do on the pending interrogatories, and the pending requests for production of documents.
>
> …
>
> I think it's important enough that you provide them with a number that you say is -- this is how we -- this is what we have calculated to be our net worth, and you provide them with the documents sufficient to show how that number was

> calculated, not all documents, not, you know, all that kind of stuff. But you got to -- you can't just give them a number. You are going to have to give them a number ***and give them some documents that shows how that number was calculated.***

(Hr'g Trans. at 9, at Dkt. No. Dkt. 42-3) (emphasis added). SafeRent admittedly did not produce any of the underlying documents but instead produced a balance sheet showing various assets and liabilities. SafeRent's production of the one-page balance sheet directly contradicts the Court's clear instruction to provide "some documents that shows how that number was calculated." *Id*. SafeRent's refusal to comply with the Court's Order exemplifies its disregard for its discovery obligations and its efforts to stonewall Plaintiff throughout the discovery period. SafeRent's failure to comply with the Court's Order, coupled with its efforts to stonewall discovery throughout the case, warrants sanctions.

**7. SafeRent Disobeyed the Court's Order Regarding Documents Related to Its Matching Procedure.**

In the first motion to compel, Plaintiff asked the Court to compel SafeRent to respond to a document request that sought "[a]ll documents related to your procedures for assigning information to a consumer file, including your matching procedures and algorithms." (Dkt. No. 15-1, at RFP No. 4). Similarly, the Court compelled SafeRent to respond to another document request that asked for "all policy manuals, procedure manuals or other documents, which address your policies, practices or procedures designed to maximize accuracy of your public record information." *Id*. at RFP No. 7.

The deposition of Chadramohan and Doyle confirm that SafeRent did not comply with the Court's Order. For example, Doyle testified:

> [redacted]

(Ex. 1, 74:3-6). Doyle further testified that an unproduced and undisclosed nickname table exists, which could be the reason why Bryan Taylor's information ended up in the consumer report of Brian Taylor. (Ex. 1, 69:19-23). Doyle's testimony establishes that SafeRent disregarded the Court's instruction to SafeRent to "produce any and all policy, manuals, procedural manuals, instructions, guidelines that kind of typed information, which describe your policies, practices or procedures designed to maximize the accuracy of your public information that were in existence or applied to the time period during 2015." (Hr'g Trans. at 17).

Putting aside the issue of what else should have been produced, SafeRent either intentionally withheld or ineffectively searched for the responsive documents despite the Court's Order. Now, three weeks before the discovery cut-off and after the close of written discovery, Plaintiff is learning that SafeRent concealed the full scope of its matching policy. Accordingly, Plaintiff respectfully requests the Court to prohibit SafeRent from opposing Plaintiff's claim that it maintained reasonable procedures to assure the maximum possible accuracy and from introducing any evidence or argument regarding the reasonableness of its matching criteria.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests the Court to grant this motion in its entirety.

Respectfully submitted,
**BRIAN TAYLOR**
By: ______*/s/*______________________
Counsel

Kristi Cahoon Kelly, VSB #72791

Andrew J. Guzzo, VSB #82170
KELLY & CRANDALL, PLC
4084 University Drive, Suite 202A
Fairfax, Virginia 22030
(703) 424-7576 Telephone
(703) 591-9285 - Facsimile
E-mail: kkelly@kellyandcrandall.com
E-mail: aguzzo@kellyandcrandall.com
*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of April, 2016, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Ronald Raether, Esq. (admitted pro hac vice)
David Neal Anthony, Esq.
Meagan Mihalko, Esq.
Timothy St. George, Esq.
Troutman Sanders LLP
1001 Haxall Point
Richmond, VA 23219
(804) 697-5410
(804) 698-5118 Fax
david.anthony@troutmansanders.com
meagan.mihalko@troutmansanders.com
timothy.st.george@troutmansanders.com
*Counsel for Defendant Corelogic SafeRent, LLC*

/s/
Kristi Cahoon Kelly, VSB #72791
KELLY & CRANDALL, PLC
4084 University Drive, Suite 202A
Fairfax, Virginia 22030
(703) 424-7576 Telephone
(703) 591-0167 - Facsimile
E-mail: kkelly@kellyandcrandall.com
*Counsel for Plaintiff*